UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Farris SAAH | ) | 3:20-CV-01682 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Vanesa D. LEVINE | ) | |
| *Defendant*. | ) | AUGUST 19, 2021 |

MEMORANDUM OF DECISION
RE: DEFENDANT'S MOTION TO DISMISS, ECF NO. 19

Kari A. Dooley, United States District Judge:

Plaintiff Farris Saah and Defendant Vanesa Levine had a confrontation inside the Harvard Club in New York City on February 6, 2019, and, following that confrontation, Defendant recorded a video of herself describing her view of what happened that evening. Defendant later uploaded this video to Facebook, a social media platform. The confrontation and the Harvard Club's actions in response to the events of February 6 are the subject of a lawsuit brought by the Defendant against, among others, the Plaintiff in state court in New York.[1] This lawsuit arises out of Defendant's reposting of the video recorded outside the Harvard Club. Plaintiff brings claims of defamation, tortious interference with his business relationships, and intentional and negligent infliction of emotional distress based on that reposting.

Pending before the Court is Defendant's motion to dismiss, which challenges the Court's exercise of personal jurisdiction over her, the efficacy of Plaintiff's service of process, and the sufficiency of the claims against her. Because the Court finds that it lacks personal jurisdiction over the Defendant, the Court GRANTS Defendant's motion to dismiss pursuant to Fed. R. Civ.

---

[1] That New York state lawsuit, filed against both Plaintiff and the Harvard Club on January 31, 2020, followed the Harvard Club's investigation of the February 6 incident and subsequent expulsion of Defendant from the club's membership. (Def.'s Ex. B to Opp. Mem., ECF No. 19-3.)

P. 12(b)(2) and does not reach Defendant's Fed. R. Civ. P. 12(b)(5) and 12(b)(6) arguments. Likewise, because both the Complaint and Amended Complaint fail to justify the Court's exercise of personal jurisdiction over the Defendant, the Court does not address Defendant's objection to the Amended Complaint.

**Allegations**[2]

Accepted as true, Plaintiff's allegations are summarized as follows. Plaintiff is a resident of Darien, Connecticut and is a member of Harvard University's faculty. (Compl. ¶ 3; Am. Compl. ¶ 3.) Defendant is a resident of Brooklyn, New York. (Compl. ¶ 4; Am. Compl. ¶ 4.) Defendant is not alleged to own property in Connecticut, to conduct business in the state, or to have physically entered the state at any time during the events giving rise to this lawsuit.

On or about February 6, 2019, Defendant posted online an accusation that Plaintiff committed a hate crime against her, assaulted her, and called her a "slut." (Compl. ¶ 5; Am. Compl. ¶ 5.) The Complaint provides no further details about the Defendant's accusation, and the Amended Complaint adds only that the accusatory statement was reposted after Plaintiff asked Defendant to take down the original posting of the statement. (Compl. ¶ 5; Am. Compl. ¶ 5.) Defendant is also alleged, in the Complaint, to have participated in the dissemination of the accusation with the purpose of causing Plaintiff emotional and financial injury. (Compl. ¶ 6.) The Amended Complaint adds that "when the identify [sic] of the plaintiff as the person being accused by the defendant was widely known to both the defendant and to the general public in the State of Connecticut and elsewhere, the defendant again reposted the aforesaid defamation and participated in and encouraged the widespread national and international dissemination of these falsehoods."

---

[2] Both the Complaint and Amended Complaint sound in four counts: (Count One) Tortious Interference with a Business Relationship, (Count Two) Intentional Infliction of Emotional Distress, (Count Three) Negligent Infliction of Emotional Distress, (Count Four) Defamation. Each count has between eight and nine numbered paragraphs. The paragraphs cited herein allege the same information across all four counts.

2

(Am. Compl. ¶ 6.) Though not specified in the Complaint or the Amended Complaint, the parties' submissions make clear that the posting and reposting of the "false assertion" is a reference to the posting and reposting of the video that Defendant recorded outside the Harvard Club on February 6, 2019.

As result of Defendant's accusation, Plaintiff claims that he has lost his position hosting a webinar and related consulting work, with the financial losses amounting to at least $150,000. (Compl. ¶ 7; Am. Compl. ¶ 7.) Plaintiff also alleges that he suffered emotional distress resulting in loss of sleep, loss of appetite, and other related physical manifestations. (Compl. ¶ 8; Am. Compl. ¶ 8.) He feared both that he would not be able to provide financially for his family and that he would endure humiliation and ostracism among his peers. (Compl. ¶ 8; Am. Compl. ¶ 8.)

**Procedural History and Additional Context**

This bare bones complaint leaves many details unknown. For example, even though it is undisputed that the video itself does not identify Plaintiff, the Complaint does not reveal how Plaintiff's identity became known, whether through the video's reposting or otherwise. Likewise, even though both parties acknowledge that the video was posted to Facebook, the Complaint does not state on which website the reposts were made and how the reposts were disseminated. The motion to dismiss, its attachments, and Plaintiff's opposition memorandum fill in some of these details. Not all of them are material to assessing the Court's jurisdiction over Defendant, but they do illustrate the substance of Plaintiff's claims. Plaintiff does not dispute any of the facts offered by Defendant that are material to deciding the Rule 12(b)(2) Motion.

As indicated, the attachments to the motion to dismiss and Plaintiff's opposition to the motion to dismiss shed some light on the circumstances giving rise to this litigation. On February 6, 2019, the Harvard Club of New York City hosted a lecture titled "The Hundred Years' War on

Palestine," which was presented by Professor Rashid Khalidi of Columbia University. (Plf.'s Opp. 1, ECF No. 20; Def.'s Ex. B to M. Dismiss.) After the initial presentation, the floor opened for a Q&A period, and attendees used a microphone to ask questions. Defendant, who is Jewish, got up to speak, and at this point, Plaintiff's and Defendant's stories about what happened inside the Harvard Club diverge. (Plf.'s Opp. 1; Def.'s Mem. 3, ECF No. 19-1.).

Plaintiff maintains that Defendant became enraged at Professor Khalidi's remarks and "embarked upon a tirade so disruptive that security personnel were constrained to remove her from the premises." (Plf.'s Opp. 1.) Defendant maintains that Plaintiff called her a slut in Arabic, attempted to grab the microphone, and assaulted her. She describes a moblike atmosphere, and she states that she was asked to leave the Harvard Club. (Def.'s Mem. 3–4.)

The parties agree, however, that shortly after her physical removal from the Harvard Club, Defendant made a video recording in which she addressed the events that transpired inside the club. She posted this video to Facebook. The video does not identify the Plaintiff by name. (Plf.'s Opp. 1–2; Def.'s Mem. 4.) As related above, Plaintiff's Amended Complaint indicates that Defendant reposted this video both after Plaintiff requested the video to come down and after Plaintiff's identity as the person to whom she was referring in the video became widely known. Plaintiff's opposition to the motion to dismiss further alleges that Defendant eventually linked this video to her New York state lawsuit, which includes Plaintiff's name, address, and other identifying information.[3] (Plf.'s Opp. 2.)

This lawsuit was filed November 9, 2020. (ECF No. 1.) On November 12, 2020, service of the Complaint was made by filing a copy of the Complaint with the Connecticut Secretary of State and making a first-class mailing. (ECF No. 8.) Plaintiff moved for a default entry on December

---

[3] Neither Complaint includes any allegation regarding the linking of the lawsuit to the video post, nor any additional details about any other content in the post.

4

11, which the Court granted on December 17, and Plaintiff subsequently moved for a default judgment on December 18, 2020. (ECF Nos. 9–11.)

The Defendant appeared through counsel on December 24 and moved to vacate the default entry on December 26. (ECF Nos. 12, 14.) Also on December 26, Plaintiff filed an Amended Complaint, to which Defendant objected on December 29.[4] (ECF Nos. 13, 15.) On December 30, 2020, the Court denied Plaintiff's motion for default judgment and set aside the default against Defendant. (ECF No. 17.)

Defendant filed the instant motion, which addresses both the Complaint and Amended Complaint, on January 7, 2021. (ECF No. 19.)

**Legal Standard**

District courts have considerable procedural leeway to decide a pretrial motion to dismiss for lack of personal jurisdiction, to include deciding the motion on affidavits alone, permitting discovery in aid of the motion, or conducting an evidentiary hearing on the motion. *Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "The showing that a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation." *Id.* (quotations and citations omitted). When the motion is made on the basis the pleadings, the court "may consider affidavits and other evidence submitted by the parties." *Carney v. Horion Investments Ltd.*, 107 F. Supp. 3d 216, 222 (D. Conn. 2015). "[A] district court may do so without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester Financial*, 772 F.3d at 86.

Plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant. *Carney v. Beracha*, 996 F. Supp. 2d 56, 60 (D. Conn. 2014). "Prior to discovery, a

---

[4] Because the Court dismisses the case for lack of personal jurisdiction over the Defendant, the Court need not address the procedural propriety of the Amended Complaint.

plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citing Fed. R. Civ. P. 11). In such a preliminary posture, as is the case here, a plaintiff need only make a *prima facie* showing of jurisdiction to defeat the motion. *Id.* The pleadings and affidavits must be read "in the light most favorable to the plaintiff, resolving all doubts in its favor." *See Dorchester Financial*, 772 F.3d at 85 (quoting *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)).

Here, Defendant has submitted a number of exhibits to the motion to dismiss, to include Defendant's affidavit. Plaintiff did not object to the Court's consideration of these materials and did not submit counter-affidavits or additional materials. Notably though, these materials do not directly challenge the allegations supporting personal jurisdiction on which Plaintiff relies.

**Discussion**

Defendant argues that the Court does not have personal jurisdiction both because the Connecticut long-arm statute does not provide jurisdiction over the Defendant and because the Defendant has not had sufficient contacts with the State of Connecticut such that the exercise of jurisdiction would comport with due process. Plaintiff contests both assertions.

"In determining personal jurisdiction in a diversity suit, the Court conducts a two-part analysis: First, the Court determines whether, under the laws of the forum state (here Connecticut), there is jurisdiction over defendants. Second, the Court determines whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 160 (D. Conn. 2009) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). Here, the Court will assume without deciding that the Connecticut long-arm statute can be satisfied because the Court

concludes that personal jurisdiction over this Defendant cannot be exercised consistent with the requirements of due process.[5]

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quoting *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013)). The minimum contacts test can be satisfied if the plaintiff can show that the court has either general or specific jurisdiction over the defendant. *Id. See also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945) (establishing the dichotomy between general and specific jurisdiction). The reasonableness of exercising that jurisdiction depends on whether doing so would "comport with fair play and substantial justice." *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 382 (S.D.N.Y. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) (further citations omitted).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, there is no claim that the Defendant is subject to the Court's general jurisdiction, and

---

[5] Notwithstanding, it does not appear to the Court that the Defendant's posting about the Plaintiff from an out of state location, about an out of state occurrence, would be considered tortious conduct within Connecticut as contemplated under Conn. Gen. Stat. § 52-59b(a)(2). As to Count Four, which contains a defamation claim, the statute explicitly excludes such claims from those tortious activities that might otherwise make a defendant reachable. As to the rest of the Complaint and Amended Complaint, there are no allegations that the Defendant's postings were directed to or at the Plaintiff or intended to reach a particular Connecticut audience. *Compare Doe v. Ciolli*, 611 F. Supp. 2d 216, 223–24 (D. Conn. 2009) (finding personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(2) where the defendant directed online posts to in-state plaintiffs and an in-state audience); *Rios v. Fergusan*, 978 A.2d 592, 599–600 (Conn. Supp. Ct. 2008) (finding personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(2) where the defendant had directed the posting to the plaintiff and thereby specifically targeted the plaintiff in Connecticut by threatening her life in a YouTube video). To the contrary, the Plaintiff alleges that the dissemination of the untruths was both national and international, rendering Connecticut tangential at best to the Defendant's efforts. Likewise, the pleadings do not illustrate that Defendant "use[d] a computer" within the meaning of Conn. Gen. Stat. § 52-59b(a)(5). *Compare MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728–29 (2d Cir. 2012) (finding personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(5) where the defendant accessed a computer server in Connecticut to use her email to extract confidential corporate files).

Defendant's affidavit confirms that she does not reside in the State. The question then is whether the Defendant's contacts with Connecticut are sufficient to establish specific jurisdiction over Defendant.

"The inquiry whether a forum may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (further citations omitted). This relationship must arise out of the contacts that the defendant *herself* creates with the forum State *itself*, not the people who reside there. *See id.* (citations omitted); *see also Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding personal jurisdiction where the defendants "expressly aimed" their tortious conduct toward the forum state). In other words, the question is whether the defendant's "suit-related conduct . . . creates a substantial relationship with the forum State." *See Waldman v. Palestine Liberation Org.*, 825 F.3d 317, 335 (2d Cir. 2016) (citing *Walden*, 571 U.S. 283–84).

The events giving rise to this matter occurred at the Harvard Club in New York. The video at issue was created outside the Harvard Club in New York. The Defendant lives in New York. The posts or reposts of the video were made somewhere outside Connecticut—presumably but not conclusively in New York. The only alleged connection between the circumstances purporting to give rise to liability and the State of Connecticut is the fact that Plaintiff is a resident of Connecticut. "But the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Indeed, both the Complaint and the proposed Amended Complaint are devoid of **any** allegation that would indicate that Defendant purposefully created any meaningful contact with the State of Connecticut. The Complaint merely alleges that Defendant "posted online" an accusation and that Defendant encouraged the "widespread dissemination" of said

8

assertion with **no mention of Connecticut at all**. The Amended Complaint does indicate that after "the identify [sic] of the plaintiff as the person being accused by the defendant [in the video] was widely known both to the defendant and to the general public in the State of Connecticut and elsewhere, the defendant again reposted" the accusation. But this allegation, even viewed in a light most favorably to the Plaintiff, does not establish that the Defendant was purposefully targeting a Connecticut audience or otherwise creating contacts with Connecticut.[6] *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (finding no personal jurisdiction where an online newspaper article did not target the forum state's readers). Likewise, crediting Plaintiff with the inference that he suffered the brunt of his alleged injury in Connecticut also does not create a sufficient basis on which to establish personal jurisdiction.[7] *See Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.").

Absent an allegation showing a relationship to the forum state, the Court cannot find that Defendant's suit-related conduct—posting a video created out-of-state about events occurring out-of-state to the Internet—creates a substantial relationship with Connecticut. *See Revel v. Lidov*, 317 F.3d 467, 474 (5th Cir. 2002) (finding no personal jurisdiction where an allegedly defamatory article posted to an Internet forum discussed plaintiff's out-of-state investigatory activities, did not specifically target the forum state's residents, and was written outside the forum state); *see also*

---

[6] The revelation in Plaintiff's opposition memorandum that one of the reposts included a link to the New York lawsuit—which does identify Plaintiff, his employer, and his residence—does not change this conclusion. Merely linking the video to the New York lawsuit does not create a purposeful contact with Connecticut. *See Walden*, 571 U.S. at 284–85; *see also*, *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 860–61 (E.D. Mich. 2019) (finding that there was a connection between the defendant's Internet post and the on-the-ground situation in the forum state, a situation that included threats reported to the state police and warnings for plaintiffs to leave their home).

[7] Both complaints indicate that Plaintiff's alleged financial injury stems from the loss of his webinar business and contracting work but leaves the location of this activity ambiguous. His opposition memorandum clarifies that Defendant interfered with his employment relationship with Harvard University, a Massachusetts institution.

*Blessing v. Chandrasekhar*, 988 F.3d 889, 905–906 (6th Cir. 2021) (finding no personal jurisdiction where there was "no evidence that the defendants posted the tweets hoping to reach [the forum] specifically as opposed to their Twitter followers generally" and the social media posts addressed out-of-state conduct); *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (finding no personal jurisdiction where the allegedly defamatory statements did not concern activity in the forum state, were not made in the forum state, and were not directed to the forum state). Indeed, Plaintiff has merely alleged that Defendant posted allegedly defamatory material concerning out-of-state conduct online, which "is not enough to hale the poster into the state where the plaintiff resides." *Vangheluwe*, 365 F. Supp. 3d at 857. *See also, e.g.*, *Twin Flames Universe.com, Inc. v. Cole*, --- F. Supp. 3d ---, 2021 WL 1105247, at *7 (E.D. Mich. Mar. 23, 2021) (finding no personal jurisdiction for claims arising from online social media posts); *Moore v. Cecil*, 488 F. Supp. 3d 1144, 1156–60 (N.D. Ala. 2020) (same); *Alexander v. Avenue*, 473 F. Supp. 3d 551, 558–59 (E.D. Va. 2020) (same); *Janus v. Freeman*, No. CV 18-08944-CJC-AS (C.D. Cal. filed Jan. 18, 2019) (same), *affirmed* 840 F. App'x 928 (9th Cir. Dec. 24, 2020); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 494–95 (W.D. Va. 2019) (same); *Kent v. Hennelly*, 328 F Supp. 3d 791, 798–99 (E.D. Tenn. 2018) (same). Defendant, therefore, could not have reasonably anticipated being haled into a Connecticut court based on her posting on the Internet from an out-of-state location, regarding out-of-state events, in a manner not targeted to a Connecticut audience.[8]

---

[8] The Court recognizes that an Internet post or postings could, under circumstances not present here, provide the minimum contacts with a forum state necessary to satisfy the Due Process Clause. *E.g.*, *Vangheluwe*, 365 F. Supp. 3d at 860–61 (finding minimum contacts with the forum state where it was reasonable to infer that a tweet was intended to cause others to engage in some action in the forum); *Ciolli*, 611 F. Supp. 2d at 223–24 (finding minimum contacts with the forum state where the pleadings and affidavits demonstrated that the defendant purposefully and repeatedly targeted student plaintiffs in the forum with postings directed to other students who were also in the forum); *Rios*, 978 A.2d at 601 (finding minimum contacts with the forum state where the YouTube video at issue directed threats against plaintiff's life while plaintiff was located in the forum).

Having found insufficient minimum contacts with the forum state, the Court need not take up the question of whether exercising personal jurisdiction over the Defendant would be reasonable under the circumstances and would "comport with fair play and substantial justice." *Commodity Futures Trading Comm'n*, 415 F. Supp. 3d at 382 (quoting *Burger King*, 471 U.S. at 476) (further citations omitted).

**Conclusion**

For the forgoing reasons, Defendant's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is GRANTED. The Court, therefore, does not reach Defendant's motions to dismiss pursuant to Rules 12(b)(5) or 12(b)(6). Further, neither party requested transfer in the event that the Court found personal jurisdiction lacking, and the Court declines to make such a transfer absent such request. The Clerk of the Court is therefore directed to close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of August 2021.

                                                     */s/ Kari A. Dooley*
                                                   KARI A. DOOLEY
                                                   UNITED STATES DISTRICT JUDGE